## No. 27424

**Sybil Fabricant Ford v. Edwin Thomas Ford and James Rutter and Janet Rutter**

(571 P.2d 717)

Decided October 3, 1977.                    Rehearing denied November 21, 1977.

Hoyman, Nanney & Dixon, Thomas F. Dixon, for defendant-appellant.

No appearance for appellee.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This matter was before the district court on respective requests by the parents of a child for a change of custody to one of them from the intervenors. The court denied the request, and we affirm.

The appellee, Sybil Fabricant Ford (the mother) commenced an action for dissolution of marriage against the appellant (the father) in January 1973. Their child, a son, was born on August 18, 1973. On June 21, 1974 the court found both the father and mother to be unfit parents and awarded custody of the child to the appellees Rutter, who are unrelated to the father or mother. The Rutters reside in Pavillion, Wyoming.

In August 1974 the father "removed the child surreptitiously from the [Rutters'] custody . . . and remained in a nomad existence . . . until May 1975, when the child was returned to the [Rutters] in Louisiana and returned by them to their Wyoming residence."[1] The child continues to live with the Rutters. The only formal appearance here has been by the father.

The trial court's findings and conclusions were adequately supported by the evidence. We now paraphrase some of them. The father has a passive, aggressive antisocial personality disorder. He has demonstrated that he has no respect for any other person's opinions or the order of the court as to what are the needs of the child. He has made threats to do physical harm to anyone who interferes with the carrying out of his opinions and actions. There is a 50-50 chance that if he had custody of the child, the boy would develop a disorder similar to that of his father.

The mother is a "hard core neurotic, in need of continued therapeutic counseling to maintain stability. . . ." She is outspoken in her unveiled anger toward the Rutters, the district court and the agencies working with the court.

---

[1]The quotation is from the district court's finding.

At least up to the time of the hearing, the father and mother have had contacts with each other. Whenever they are together, "unstable, volatile and even violent reactions occur which in the past have been detrimental to the child and could cause physical and emotional detrimental effects upon [him] if continued in his presence." A return of custody to either of the parents could not be controlled by reason of their continued attraction to each other.

The child has progressed normally in every way and remains a bright, healthy, well-adjusted child. The Rutters are fit and proper persons to have custody.[2]

The father argues as to three issues:

1. Section 14-10-131(2), C.R.S. 1973 is unconstitutional.
2. The court erred in finding that there were no significant changes of circumstances.
3. The court erred in denying his motion to reopen and his motion for new trial.

I.

Section 14-10-131(2), C.R.S. 1973 reads:

"The court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. In applying these standards, the court shall retain the custodian established by the prior decree unless:

"(a) The custodian agrees to the modification;

"(b) The child has been integrated into the family of the petitioner with the consent of the custodian; or

"(c) The child's present environment endangers his physical health or significantly impairs his emotional development and the harm likely to be caused by the change of environment is outweighed by the advantage of a change to the child."

The trial court in part predicated its ruling upon the provisions of this statute.

█ In his argument as to unconstitutionality, the father relies in large part upon *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), to support his contention that our statute unconstitutionally interferes with the rights of parents. We find *Stanley* completely distinguishable. There the Illinois statute which was involved provided that children of unwed fathers become wards of the state upon death of

---

[2]This is the end of the paraphrasing of the findings.

the mother, *i.e.*, the father is treated not as a parent but as a stranger to his child. In *Stanley* the unwed father was totally denied any hearing as to his fitness. The district court here, in discussing *Stanley*, stated:

"In the situation at bar, [the mother] and [the father] have both had full due process adjudication of their fitness, with the result that custody was denied but their fitness was affirmed to support their visitation rights. Their fitness though affirmed was not found to be in the best interests of the child for legal custody when compared to the [Rutters]."

The father also argues that *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), supports his position. It is even less in point then *Stanley*. The other cases cited by the father are completely distinguishable and not authoratative as to this case.

We agree with the district court in its statement:

"No citations are supplied by [the mother] or [the father] which show any precedent for holding the statute unconstitutional. . . . Without precedent, the Court is constrained by the universally held rule that the Court should presume the statute constitutional."

■ As a part of this argument the father contends that the Colorado Children's Code section 19-1-101 *et seq.*, C.R.S. 1973 requires that there be a modification in custody unless parental rights have been terminated under that code. We direct attention to the following portion of the code:

"Where a custody award has been made in a district court in a dissolution of marriage action or another proceeding and the jurisdiction of the district court in the case is continuing, the juvenile court may take jurisdiction in a case involving the same child if he is dependent or neglected or otherwise comes within the jurisdiction set forth in this section." Section 19-1-104(6).

There have been no juvenile court proceedings. The only proceedings involving the custody of the child have been in this dissolution of marriage action.

On November 19, 1975, the court ordered that the parents might have visitation twice a month with the child at the Rutters' home in the presence of one of the Rutters between 9:00 a.m. and 5:00 p.m. on the days designated. The visitation by the mother was and is for the first and third Friday and by the father on the first and third Saturday of each month. Under the constitutional issue, the father contends that since the court has found the parents fit for visitation, it follows that they are fit for custody. Of course, this does not support the father's constitutional argument. In any event, it is so devoid of merit that it warrants no further discussion.

## II.

■ The father states that "[t]he Court erred in finding that there were no significant changes of circumstances in the child or his custodians to justify a change of custody." The argument in support of the

proposition can be distilled to a statement that the court should have predicated its ruling upon evidence other than that which it used.

As already indicated, the ruling of the trial court was supported by ample, competent evidence. Thus we affirm that ruling.